## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

PATRICIA L. ARMSTRONG,               )
                                     )
                Plaintiff,           )
                                     )
v.                                   )     Case No. CIV-16-022-JHP-KEW
                                     )
NANCY A. BERRYHILL, Acting           )
Commissioner of Social               )
Security Administration,             )
                                     )
                Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Patricia L. Armstrong (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on September 13, 1966 and was 47 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant has worked in the past as a cafeteria worker and hospital housekeeper. Claimant alleges an inability to work beginning December 22, 2010 due to limitations resulting from depression, anxiety, muscle spasms, headaches, right shoulder pain, bilateral arm pain, lower back pain, and weak grip strength.

## Procedural History

On September 27, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 19, 2014, Administrative Law Judge Bernard Porter ("ALJ") conducted a hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On August 18, 2014, the ALJ issued an unfavorable decision. On December 31, 2015, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper credibility analysis; (2) reaching an unsupported RFC; and (3) failing to develop the record.

## Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar disc disorder, cervical disc disease, headaches, angina, decreased hearing, depressive disorder, and anxiety disorder. (Tr. 57). The ALJ concluded that Claimant retained the RFC to perform light sedentary work except that Claimant required a sit/stand option with the ability to change positions every 30 minutes for a brief period lasting no more than three or four minutes at a time. Claimant was limited to occasional use of foot and hand controls. She could occasionally reach overhead and occasionally climb ramps and stairs but never ladders or scaffolds. She could frequently balance, stoop, and crouch but only occasionally kneel. Claimant could never crawl. She must avoid work around unprotected heights or moving mechanical parts, must avoid work around temperature extremes, and must avoid work that has more than a moderate noise level. Claimant was restricted to simple tasks and simple, work-related decisions. She could occasionally interact with co-workers, supervisors, and the public. Claimant would be off task up to ten percent of the workday. (Tr. 60).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of shipping and receiving weigher, officer helper, and photocopy machine operator, all of which were found to exist in sufficient numbers in both the

regional and national economies. (Tr. 67). As a result, the ALJ found Claimant was not disabled from December 22, 2010 through the date of the decision. Id.

Claimant contends the ALJ erred in his analysis of Claimant's credibility. Since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting effects of symptoms in disability claims - what heretofore has been known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL 374186 (July 2, 1996). On remand, the ALJ shall apply the new guidelines under Soc. Sec. R. 16-3p in evaluating Claimant's testimony regarding "subjective symptoms".

## RFC Evaluation

Claimant contends the ALJ reached an unsupported RFC. Claimant first asserts that the RFC should be more restrictive "considering the medical records in this case, as well as the Medical Source Statement of Dr. Danny Silver in this file." This Court will not ferret out potential error in the RFC by sifting through the entirety of the medical records without a more specific reference by Claimant.

As for Dr. Danny Silver, he provided a medical source

statement dated June 3, 2014. He diagnosed Claimant with postlaminectomy cervical spine syndrome, cervical degenerative disc disease, lumber degenerative disc disease, carpal tunnel syndrome, bilateral hand and wrist problems, osteoarthritis in multiple joints, depression, and anxiety. He limited Claimant to sitting at one time for 20 minutes and for two hours during an eight hour workday, standing at one time for 20 minutes and for two hours during an eight hour workday, and walking for ten minutes at a time and for one hour during an eight hour workday. She could occasionally lift/carry up to ten pounds and frequently up to five pounds. (Tr. 663). Claimant could not use her hands for simple grasping or fine manipulation but could push and pull. She could occasionally bend and reach above her head but never squat, crawl, climb, stoop, crouch, or kneel. She could not be exposed to unprotected heights, marked changes in temperature, or dust, fumes and gases as this leads to headaches. She could occasionally be around moving machinery, drive automotive equipment, and be exposed to noise. Claimant's pain was objectively manifested by muscle spasms and prior surgeries. He rated Claimant's pain as "severe". (Tr. 664). He estimated that Claimant would be required to take unscheduled breaks during an eight hour work shift and would be absent from work more than four days per month. She would also

need to elevate her feet periodically during the day and have a sit/stand/walk option at will. In his narrative statement, Dr. Silver stated "repetitive lifting, bending leads to increased low back pain, sitting in same position leads to severe pain in shoulders, back of neck which causes headaches." (Tr. 665).

The ALJ gave Dr. Silver' opinion "little weight" concerning the inability to sit, stand, and walk for a full workday, lifting restriction to ten pounds, sit/stand option, work absences, and required breaks as contrasting with his own observations, including Claimant's normal gait and range of motion. His link between headaches and environmental irritants was rejected based upon Claimant's statements that neck contractions caused her headaches. Dr. Silver's restrictions on grasping and fine manipulation were given "little weight", asserting the record lacks a "clear assessment" for carpal tunnel syndrome and earlier reports showed Claimant had full strength in her hands. (Tr. 65).

The ALJ attempts to manufacture inconsistencies between Dr. Silver's testing and recommended restrictions. The relation between gait and the cited restrictions are remote. Dr. Silver, in fact, found limited range of motion in Claimant's cervical spine. (Tr. 666). Grip strength was reduced. (Tr. 667). These findings conflicted with the examination findings of Dr. Schatzman to a

degree but the ALJ was required to proceed through the controlling weight analysis to which treating physician's opinions are entitled.

.    In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003).   An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."   <u>Id</u>. (quotation omitted).   "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."   <u>Id</u>.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."   <u>Id</u>. (quotation omitted).   The factors reference in that section are:   (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is

supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

On remand, the ALJ shall re-evaluate Dr. Silver's opinion and give the opinion the deference of a treating physician to which it is entitled under Watkins.

### RFC Evaluation

Claimant contends the ALJ reached an unsupported RFC. Claimant suggests that if the restrictions found by Dr. Silver had been included in the RFC, she would not have been able to perform

light work.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

The RFC may or may not be altered as a result of a reassessment of Dr. Silver's opinion. On remand, the ALJ shall re-evaluate his RFC after considering Dr. Silver's position on

Claimant's functional limitations.

## Duty to Develop the Record

Claimant asserts the ALJ should have re-contacted Dr. Silver with any concerns over his opinion. It may be beneficial for the ALJ to consult with Dr. Silver but it certainly is not required. This Court will not mandate that the ALJ re-contact Dr. Silver.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE